**UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY**

| | |
|---|---|
| DERIK DEANGELO, LUIS A. HERNANDEZ, CHAMBLIN GROUP REAL ESTATE VENTURES LLC and REISPEC DEVELOPMENTS LLC, | Civil Action No.: 2:23-cv-22655 |
| Plaintiff, | |
| v. | **SECOND AMENDED COMPLAINT** |
| CESAR HUMBERTO PINA, WHAIRHOUSE HOLDINGS LLC, WHAIRHOUSE INVESTMENTS LLC, WHAIRHOUSE REAL ESTATE LLC, WHAIRHOUSE LIMITED LIABILTIY COMPANY a/k/a WHAIRHOUSE LLC, FLIP THE DAO LLC d/b/a "FLIP 2 DAO," and RAASHAUN CASEY a/k/a DJ ENVY, JENNIFER ITURRALDE PINA, LUIS PINA, FROM START 2 FLIPPING LLC, FROM START 2 FLIP CONSULTING 2 LLC, FROM START 2 FLIP CHICAGO LLC, JASMINE 101 LLC, CESAR and DJ ENVY SEMINARS LLC, TAYLOR PINA, PAULA LLANOS, LAND TRAP LORD LLC d/b/a "TRAP LAND LORD," 13910 WOODWORTH LLC, 13604 EARLWOOD ROAD LLC, 3110 EAST 94TH STREET LLC,  11611 SAYWELL AVE LLC, 11831 UNION AVE LLC, 14116 STRATHMORE AVE LLC, 1715 TAYLOR ROAD LLC, 1842 COLONNADE ROAD LLC, 3549 EAST 151ST LLC, 6003 THACKERAY LLC, 6615 CLARK AVE LLC, 799 EAST 103RD STREET LLC and 8301 KORMAN AVE LLC, | |
| Defendants, | |

Plaintiffs Derik Deangelo ("Deangelo"), Luis A. Hernandez ("Hernandez") Chamblin Group Real Estate Ventures LLC ("Chamblin Group") and Reispec Developments LLC ("Reispec") (collectively "Plaintiffs"), by and through their counsel, the Law Office of Alexander Schachtel, LLC, do hereby say and allege, by way of Complaint against Defendants Cesar Humberto Pina ("Pina"), Whairhouse Holdings LLC, Whairhouse Investments LLC, Whairhouse Real Estate LLC and Whairhouse Limited Liability Company a/k/a Whairhouse L.L.C. (the "Whairhouse Entities"), Jennifer Iturralde Pina ("Iturralde"), Luis ("Luchie") Pina ("Luis Pina"), From Start 2 Flipping LLC, From Start 2 Flip Consulting LLC, From Start 2 Flip Consulting 2 LLC, From Start 2 Flip Chicago LLC, (the "Start 2 Flip Entities"), Land Trap Lord LLC d/b/a "Trap Landlord"("Trap Landlord"), Jasmine 101 LLC, Flip the Dao LLC d/b/a Flip 2 Dao ("Flip 2 Dao"), Taylor Pina, Paula Llanos ("Llanos") Cesar and DJ Envy Seminars LLC ("Seminars LLC"), Raashaun Casey a/k/a DJ Envy, ("Casey") 11611 Saywell Ave LLC, 11831 Union Ave LLC, 13604 Earlwood Road LLC, 13910 Woodworth LLC, 14116 Strathmore Ave LLC, 1715 Taylor Road LLC, 1842 Colonnade Road LLC, 3110 East 94th Street LLC, 3549 East 151st LLC, 6003 Thackeray LLC, 6615 Clark Ave LLC, 799 East 103rd Street LLC, and 8301 Korman Ave LLC (the "Ohio Property LLCs")  (collectively "Defendants"),  as follows:

## PARTIES, JURISDICTION AND BACKGROUND FACTS

1.   Plaintiff DeAngelo is a natural person residing at 14 Burnham Road, North Billerica, Massachusetts 01862.

2.   Plaintiff Hernandez is a natural person residing at 1414 Willoughby Avenue, Brooklyn, New York, 11237.

3.   Plaintiff Chamblin Group is a New York limited liability company with a main office address of 523 Advent Street, Westbury, New York 15590.

4.   Plaintiff Reispec is a Virginia limited liability company with a main office address of 3400 South Clark Street, Apt. 514 Arlington, VA 22202.

5.   Defendant Cesar Pina is a natural person residing at 101 Jasmine Court, Franklin Lakes, New Jersey 07417.

6.   Defendant Jennifer Iturralde Pina is a natural person residing at 101 Jasmine Court, Franklin Lakes, New Jersey 07417, she is the wife of Defendant Cesar Pina.

7.   Defendant Luis Pina is a natural person residing at 8 Guenther Place, Passaic, New Jersey 07055, he is the brother of Defendant Cesar Pina.

8.   Defendant Taylor Pina is a natural person residing at 101 Jasmine Court, Franklin Lakes, New Jersey 07417, she is the daughter of Cesar Pina and Jennifer Pina.

9.   Defendant Paula Llanos is a natural person residing at 133 Westerveldt Avenue, North Haledon, New Jersey 07508.

10.  Defendant Llanos is a licensed cosmetologist in the State of New Jersey and a close friend and personal stylist of co-Defendant Jennifer Pina.

11.  Defendant Raashaun Casey ("Casey" or "DJ Envy") is natural person residing at 37 Powderhorn Drive, Kinnelon, New Jersey 07405, he is the long-time business partner of Defendant Cesar Pina.

12.  Defendant Casey is also a radio personality and the co-host of a morning talk show.

13.  The Whairhouse Entities are New Jersey LLCs with registered offices located at 811 Totowa Road, Totowa, New Jersey 07512 and 1 Bridge Plaza North, Ste. 665, Fort Lee, New Jersey 07605.

14.  The Start 2 Flip Entities are also New Jersey LLCs with registered offices located at 811

Totowa Road, Totowa, New Jersey 07512 and 1 Bridge Plaza North, Ste. 665, Fort Lee, New Jersey 07605.

15.   Defendant Trap Land Lord is a New Jersey LLC with registered offices located at 1 Bridge Plaza North, Ste. 665, Fort Lee, New Jersey 07605.

16.   Defendant Flip 2 Dao is a New Jersey LLC with main offices located at 811 Totowa Road, Totowa, New Jersey 07512

17.   Defendant Cesar and DJ Envy Seminars LLC is a New Jersey LLC with main offices located at 411 19th Street, Paterson, New Jersey 07504.

18.   Defendant Jasmine 101 LLC is a New Jersey LLC with main offices located at 101 Jasmine Court, Franklin Lakes, NJ 07417.

19.   All business entities named above are owned and managed by the Defendants Cesar Pina, Jennifer Pina, Luis Pina, and Raashaun Casey.

20.   Defendants 11611 Saywell Ave LLC, 11831 Union Ave LLC, 13604 Earlwood Road LLC, 13910 Woodworth LLC, 14116 Strathmore Ave LLC, 1715 Taylor Road LLC, 1842 Colonnade Road LLC, 3110 East 94th Street LLC, 3549 East 151st LLC, 6003 Thackeray LLC, 6615 Clark Ave LLC, 799 East 103rd Street LLC, and 8301 Korman Ave LLC (the "Ohio Property LLCs"), are thirteen LLCs incorporated by Taylor Pina and Paula Llanos in August 2023.

21.   The Ohio Property LLCs each hold title to a single real property with a street address corresponding to the name of the LLC, located within the City of Cleveland, Ohio.

22.   Defendants Taylor Pina and Paula Llanos are registered as managing members and agents of each of the Ohio Property LLCs.

23.   Upon information and belief, Defendants Cesar and Jennifer Pina formed the Ohio

Property LLCs through the unwitting participation of their daughter Taylor Pina, to attempt to conceal assets from these Plaintiffs and their other victims.

24.   Many of the business entity Defendants named herein, including Cesar and DJ Envy Seminars LLC have had their certificates of authority revoked by the State of New Jersey for failing to file required annual reports for multiple years.

25.   None of the business entities have employees or active business offices.

26.   Upon information and belief, none of the named entities conduct actual business activities, rather they are used as fronts by the Defendants to hold title to various real properties and to enter into alleged investment agreements and joint venture agreements with third parties.

27.   Defendant Trap Land Lord sells jewelry, apparel, and other branded merchandise under its "Trap Land Lord" brand name.

28.   Defendant Flip 2 Dao, at one point, operated a digital real estate and cryptocurrency investment platform.

29.   Flip 2 Dao was "co-founded" by Defendants Cesar Pina and Raashaun Casey.

30.   The individual Defendants named herein at all relevant times used the business entity Defendants as their personal alter egos.

31.   The individual Defendants named herein at all relevant times commingled their own finances with those of the named business entities and used bank accounts set up in the names of the entities as if they were their own personal accounts.

32.   The individual Defendants at times took personal loans secured by assets of the LLCs, or personally withdrew and used loan proceeds which were advanced in the name of the LLCs.

33.   The individual Defendants named herein were partners in fact in the operation of the

named business entities, sharing profits and losses, contributing capital, and otherwise holding themselves out to the public as partners.

34.   Diversity jurisdiction is present in this matter pursuant to 28 U.S. Code § 1332 as all Plaintiffs and all Defendants are residents of different states and the amount in controversy exceeds $75,000.00.

35.   Personal jurisdiction over the parties is present in this forum as all Defendants are residents of New Jersey or domiciled in the State of New Jersey.

<u>**FACTS COMMON TO ALL COUNTS**</u>

36.   In or around 2018, Defendants Cesar Pina, Jennifer Pina, Luis Pina, and Raashaun Casey began to partner together to invest in real properties located principally within the State of New Jersey.

37.   Their strategy, by Defendant Cesar Pina's account, was to buy undervalued properties in foreclosure and to renovate them and sell them after short-term holding periods for profit.

38.   Some of Defendants properties were retained and used to generate rental income from residential tenants.

39.   According to recorded statements made by Defendants Cesar Pina and Raashaun Casey, their enterprise at some point owned and managed "over 2000 properties" "worth probably 100 million dollars."

40.   In or around 2018, Defendants Cesar Pina and Raashaun Casey began to publish promotional materials on social media, typically in the form of videos, short informational posts, or other recordings, which depicted them doing walkthroughs of their properties or discussing their purported success in real estate investing.

41.   In many of these videos, Defendants Pina and Casey referred to one another as

business partners.

42.   From 2019 through 2023, the Defendants increased their social media following drastically, gaining millions of followers across Facebook, Instagram, TikTok, Twitter, and other social media platforms.

43.   In 2018, Defendants Cesar Pina and Raashaun Casey began to co-host real estate seminars in New Jersey, New York, and other states under the name "Flipping NJ."

44.   In 2018, Defendants incorporated a business entity, Defendant Cesar and DJ Envy Seminars LLC, to collect income from their joint real estate seminars.

45.   As set forth above, Defendant Casey is a radio personality who co-hosts a show and called "The Breakfast Club" on radio station 105.1 which is broadcast in the greater New York City area.

46.   At some point in 2020, Defendant Casey began to bring Defendant Cesar Pina onto his radio show as a frequent guest to discuss real estate investing.

47.   From 2020-2023, Defendant Casey repeatedly brought Pina onto his radio show to market their seminars to members of the public and to otherwise boost their social media presence.

48.   From 2020-2023, Defendant Casey brought other members of Pina's network onto the radio show, including Jennifer Pina, to discuss real estate and their seminars.

### FLIPPING NEW JERSEY "REAL ESTATE SEMINARS"

49.   As set forth above, Defendants Casey and Pina co-hosted and co-operated operate seminars in New Jersey and New York under the title "Flipping New Jersey" or "Flipping NJ" from 2018 through the end of 2022.

50.   The Flipping NJ seminars were held multiple times per year.

51. Tickets to the seminars ranged from $100 to $200 per person.

52. Some of the most widely attended seminars were held at the Javits Center in New York City and attracted upwards of 5,000 individual guests.

53. Flipping NJ has also hosted seminars in other states including Florida and Nevada.

54. Defendants Pina and Casey marketed the Flipping NJ seminars to members of the public as instructional and educational conferences through which attendees would be exposed to a variety of successful real estate professionals and learn how to invest in properties to build wealth.

55. However, in reality, these seminars were used as funnels to draw in victims for the Defendants' scam.

56. Featured prominently in these seminars were members of Pina's family and friends including his brother, Defendant Luis "Luchie" Pina, his wife, Defendant Jennifer Iturralde Pina, Defendant Casey ("DJ Envy") and other professionals providing credit repair, mortgage brokering, real estate, contracting and construction and legal services (the "Pina network").

57. Advertising for the seminars was done heavily on the radio through the 105.1 New York broadcast station and particularly on DJ Envy's show, "The Breakfast Club" as well as through billboards and other radio stations.

58. Advertising for the seminars was also done heavily via social media marketing on Instagram, Facebook, Twitter, OnlyFans, and other platforms, through the social media profiles of the individual Defendants named herein.

59. Before, during and after the speaker presentations at these seminars, attendees were encouraged and at times directly solicited by Casey and other members of the Pina network to "invest with us."

60.  Some seminar attendees were offered opportunities to partner with the Defendants in personalized real estate "joint venture" contracts.

61.  Beginning in 2022, seminar attendees were also solicited by the Pina, Casey and others to purchase "memberships" in "Flip2Dao" which was supposed to be both a cryptocurrency and real estate networking platform.

62.  Following the speaker presentations at these seminars, members of the Pina network, including DJ Envy, set up booths at which they offered private consultations with seminar attendees as well as meet and greets.

63.  During these private consultations, members of the Pina network obtained phone numbers, emails, and other contact information of the seminar attendees.

64.  During these private consultations and meet and greets, members of the Pina network attempted to "size up" the financial resources of each attendee and solicited individuals with sufficiently high net worth to "partner" with Pina, Envy, and other members of the network in real estate "joint ventures."

65.  During these meetings, Pina also offered his personal "consulting services" wherein he made himself available for one-on-one private meetings with guests at his office for flat rate fees ranging from $1,500 to $2,500 per meeting and more.

## PERSONAL MEETINGS AND "JOINT VENTURE" CONTRACTS

66.  After the seminars, members of the Pina network would reach out directly to attendees who demonstrated an interest in "partnerships" to solicit them to invest in real estate "joint venture" agreements.

67.  If persons contacted demonstrated further interest, they would be invited to Casey and Pina's shared office in Totowa to discuss personalized "joint ventures."

68.   Interested persons were eventually presented with contracts titled "joint venture agreements."

69.   These real estate joint venture contracts were typically specific to one or more real properties which the Defendants jointly owned and controlled, or which investors were led to believe were jointly owned and managed by Defendants Cesar Pina and Raashaun Casey.

70.   The contracts required investors to make an upfront "capital contribution" to buy into the "joint venture."

71.   The contracts represented that the investors' funds would be used to renovate the subject properties to improve their resale value.

72.    The contracts promised returns of 125-140% of the investors' "capital contribution," which was promised to be paid out within 5-6 months, upon the sale of the subject property or properties.

73.   The contracts promised that if the subject property or properties did not sell, the investor would receive a full return of their capital contribution, without the promised premium.

74.   The Defendants informed investors that their capital contribution funds would be used to renovate, remodel, or otherwise improve the subject property to enhance value for resale.

75.    The Defendants informed investors that they owned outright each subject property.

76.   The Defendants personally guaranteed each investor that they would receive, at minimum, a full return of the principal amount of their capital contribution.

77.    The Defendants did not disclose to investors that the subject properties were already encumbered by other liens, mortgages, or third-party interests.

78.    The Defendants did not disclose to investors that they had pledged returns on the same properties to multiple investors.

79.   In fact, interests in some of the "joint venture" contract properties were pledged to tens if not hundreds of separate individual investors.

80.   In fact, total investment funds raised against some of the "joint venture" contract properties vastly exceeded the market value of the properties.

81.   Defendants' contracts often misrepresented the addresses of subject properties.

82.   Defendants' contracts at times misrepresented the name of the entity that was the record owner of the subject property.

83.   Defendants' investment contracts at times pledged interests in properties which he and his network and/or shell companies did not actually own or control.

### DEFENDANTS' SOCIAL MEDIA MARKETING OPERATION

84.   In addition to and in conjunction with the operation of the real estate seminars, the Pina network aggressively promoted itself on social media channels including but not limited to Facebook, Instagram, Twitter, TikTok, OnlyFans, and other platforms.

85.   All members of the network operated independent media pages but were commonly featured and tagged in group posts and videos which promoted the seminar and the enterprise.

86.   Cesar Pina operated personal social media pages under his name and under the name "Flipping NJ."

87.   Luchie Pina operated social media pages under his personal name and under the name "Luchie Rentals."

88.   Jennifer Pina operated social media pages under the name "JenniTips."

89.   Casey/DJ Envy operated social media pages under his stage name "DJ Envy."

90.   The network also operated various social media pages under their "Trap Landlord" brand including an Instagram page under account name @traplandlordshop.

91.   The above-mentioned social media personalities and profiles had on average follower counts ranging from the tens of thousands to hundreds of thousands across multiple platforms.

92.   Members of the network and enterprise would frequently post videos to the above-referenced platforms along with other third-party collaborators and service providers.

93.   The main method of online marketing and promotion for the Defendants enterprise was accomplished through joint videos narrated by DJ Envy and published by DJ Envy and Cesar Pina on various social media platforms.

94.   Upon information and belief, there were hundreds of such videos published by DJ Envy and Cesar Pina from 2019-2022.

95.   Many of these videos features DJ Envy and Cesar doing walkthroughs of properties together which they describe as their jointly owned properties.

96.   Many of these videos features DJ Envy and Cesar promoting upcoming seminars or in person events, and in some of these videos DJ Envy directly informs viewers that if they attend the seminars they will have the opportunity to partner and/or invest with he and Cesar in their real estate business or in specific property deals.

97.   Many of these videos were recorded at Defendants shared office in Totowa, New Jersey.

98.   Some of these videos feature Defendants counting stacks of cash or collecting stacks of checks which the two represent to be the proceeds of rent or other income from their real estate business.

99.   During these promotional videos, DJ Envy and Cesar Pina frequently refer to their seminars as a joint enterprise.

100.      During these promotional videos, DJ Envy and Cesar Pina frequently refer to

their real estate property holdings as a partnership or joint enterprise.

101.     During these promotional videos, DJ Envy and Cesar Pina frequently wear and display "Trap Land Lord" clothing, jewelry and apparel, which is a company or brand that they own jointly.

102.     In some of these promotional posts and videos, DJ Envy and Cesar Pina appear with celebrities and prominent musicians to promote themselves and to encourage members of the public to become involved with their enterprise.

103.     In or around 2020 or later, DJ Envy and Cesar Pina also began to promote themselves together at car shows which featured cars from DJ Envy's luxury car collection.

104.     In a multitude of social media videos published by the network on various platforms, DJ Envy appeared alongside Cesar Pina and referred often to himself as Cesar's business partner.

105.     As Defendants expanded their influence and grew their network on social media, they attracted new victims into their investment scam from their connections, followers, and general sphere of influence on the internet.

106.     Many of these victims were followers of the Defendants online.

107.     In or around 2021, Cesar and DJ Envy created a novel vehicle for the investment scam which they titled "Flip2Dao."

108.     Defendants marketed Flip2Dao at one time as a blockchain based cryptocurrency which would allow members of the public to purchase fractional shares in their real property holdings.

109.     Defendants marketed Flip2Dao at other times as a real estate networking

platform which would provide members with exclusive access to the Defendants' real estate expertise.

110.     Defendants promoted Flip2Dao through property "giveaways" and by offering tickets to DJ Envy's car shows which featured his luxury exotic car collections.

## **VICTIMS SPEAK OUT AND THE SCAM IS EXPOSED**

111.     In or around April 2023, an inside member of the Pina network shared a video on social media alleging that he had been defrauded by the Defendants out of several hundred thousand dollars which he had pledged in a real estate joint venture agreement.

112.     In the ensuing months, tens if not hundreds of individuals came forward on social media alleging that they too had invested with the Defendants in joint venture property agreements and that the Defendants had failed to pay back any of their money.

113.     The majority of victims had "invested" funds with the Defendants in large amounts ranging from $100,000 to $400,000.

114.     Some victims and celebrities had "invested" larger amounts totaling high six figure sums or in some cases multi-million dollars.

115.     The largest financial victim reported to date appears to be a Miami-based musician who alleges that he lost 5 million dollars.

116.     Current estimates among members of the public are that victims of this fraud scheme were scammed out of funds totaling 50-100 million dollars or more.

117.     As of the date of this Complaint, the United States Attorney's Office for the District of New Jersey has criminally charged Defendant Cesar Pina with wire fraud for the activities that are the subject of this lawsuit.

## **FACTS SPECIFIC TO PLAINTIFF DEANGELO**

118.     Plaintiff DeAngelo first became familiar with Pina in 2018 when he began to follow his "Flipping NJ" page on Instagram.

119.     DeAngelo is a regular listener of DJ Envy's radio show, the "Breakfast Club" radio continued to follow Pina through his radio appearances.

120.     DeAngelo first became interested in investing with the Defendants in July 2022, when he watched a video published by Pina and Casey on Instagram discussing a potential residential property acquisition.

121.     The Defendants stated in this video that they were seeking "partners" to invest in some of their real estate projects.

122.     After viewing the video, Plaintiff DeAngelo immediately reached out to Pina via direct message to the "Flipping NJ" Instagram page to discuss terms of a potential partnership.

123.     Pina responded and offered Plaintiff DeAngelo the opportunity to invest $100,000 in a real estate partnership.

124.     After some deliberation, Plaintiff responded to Pina in October 2022 and advised that he was willing to invest $100,000 in a real estate partnership.

125.     Pina advised Plaintiff that his partnership would be specific to a single real property and that it was an "exclusive offer" that was only available to select individuals as it was a promised payout within five (5) months.

126.     Plaintiff was advised that he would receive a total of $130,000 as return on his investment when the partnership concluded upon sale of the property.

127.     Pina emphasized repeatedly that this was "guaranteed money," that Plaintiff was lucky to have the opportunity to invest and would be silly to walk away from the deal.

128.     On October 12, 2022, Plaintiff signed a "joint venture" agreement with

Whairhouse LLC that was specific to real property located at 523 Park Avenue, Paterson, New Jersey 07513.

129.     The agreement was supported by a "personal guarantee" signed by Pina and his wife Jennifer Pina.

130.     As per Pina's verbal representations, the agreement promised that Planitiff was investing $100,000 for the purpose of renovating the property, and would receive a total return of $130,000 upon sale of the property but not later than four (4) months after the contract execution date.

131.     Plaintiff wired Pina $100,000 in funds immediately after signing the joint venture agreement.

132.      Plaintiff did not hear from Pina at all over the next four months.

133.     On or around February 12, 2023, Plaintiff reached out to Pina and asked for his promised return on investment.

134.     Pina did not immediately respond.

135.     When Pina eventually did respond, he stated that he was delayed in making payment.

136.     Plaintiff continued to press for his promised return and eventually Pina asked him to drive down from Massachusetts to his office in Fort Lee to pick up his checks.

137.     On or around April 12, 2023, Plaintiff drove down to Fort Lee and picked up two checks from Pina totaling $130,000.00, drawn from an account in the name of Whairhouse LLC.

138.     Plaintiff deposited these checks and they bounced.

139.     Plaintiff followed up with Pina who advised him that he would have his bank reissue payment for the bounced checks by making direct transfers into his account.

140.     Plaintiff learned that this was not possible and confronted Pina.

141.     Plaintiff threatened to filed criminal charges against Pina, prompting him to wire $30,000.00 back to DeAngelo.

142.     Pina told Plaintiff that the balance of his funds, $100,000 would be returned in a short period of time.

143.     Plaintiff DeAngelo has not received the balance of his funds to date.

## FACTS SPECIFIC TO PLAINTIFF CHAMBLIN GROUP

144.     Plaintiff's principal Nigel Chamblin had become acquainted with Defendants Cesar Pina and DJ Envy through their social media accounts and joint postings in early 2022.

145.     Plaintiff had viewed numerous videos shared by Defendants Cesar Pina and DJ Envy on social media discussing their real estate partnership and property holdings.

146.     Plaintiff's principal was also familiar with DJ Envy through his radio show and had listened to Defendant Cesar Pina and his friends and family make promotional appearances on DJ Envy's show.

147.     Plaintiff's principal met Defendant Cesar Pina at a real estate conference in Atlanta in 2022.

148.     At the time, as set forth above, Plaintiff's principal was quite familiar with Pina through his publications on social media and his radio appearances.

149.     Upon meeting Chamblin, Defendant Pina shared his contact information with the former and asked him to stay in touch.

150.     The two stayed in contact over the next few months and in early 2023 Cesar Pina began to solicit Chamblin make large investments in real property joint ventures.

151.     Chamblin was led to believe that these opportunities were in connection with

Pina's ongoing real estate business partnership with DJ Envy that the two advertised heavily on social media.

152.     At or around this time, Pina aggressively solicited Chamblin to assist him in making introductions to individuals in the finance industry.

153.     Pina hoped to persuade these individuals to work with him to start a large real estate investment fund.

154.     Pina and Defendant Casey prepared presentations and pitchbooks in connection with their efforts to solicit individuals to finance their fund.

155.     Defendant Casey, throughout these talks, represented and held himself out to Plaintiff as an active partner in these real estate ventures.

156.     Plaintiff was also made aware, during this time, that Defendant Casey and Defendant Pina had filmed portions of a television show which was slated to air on HGTV under a working title "Property Players."

157.     Defendants shared clips from their HGTV show with Chamblin to induce him to Invest and asked him to share the clips with other prospective financers.

158.     Chamblin ultimately entered into three joint venture agreements with Defendants specific to real properties located at 145-147 Manchester Avenue, Paterson, New Jersey, 149 Franklin Avenue, Hawthorne, New Jersey, and 27 S. Boyden Parkway, Maplewood, New Jersey.

159.     Plaintiff invested a total of $835,000.00 in funds as a capital contribution across the three properties.

160.     A separate joint venture contract was executed for each property.

161.     Plaintiff was promised a total return of capital in the amount of $1,115,500.

162.     Plaintiff was promised repayment within 5-6 months upon the sale of the

property.

163.   Plaintiff was promised that if the properties did not sell, he would receive a full return of his initial contribution of $835,000.00.

164.   Plaintiff was told that its funds would be used to renovate each subject property to substantially enhance resale value.

165.   Plaintiff was advised that the Defendants "already had buyers in place" who had orally agreed to purchase the subject properties after renovations were completed.

166.   Plaintiff was not advised that any of the subject properties had other sources of financing, including from retail individual investors or from banks or financial institutions.

167.   Plaintiff was not advised that any of the subject properties were subject to prior encumbrances such as mortgages or liens.

168.   Plaintiff was not advised that any interests in the subject properties had been pledged to other third party investors in similar "joint venture" contracts.

169.   On or around April 17, 2023, Plaintiff executed three separate contracts with Defendants for the above-referenced properties.

170.   The Defendants signed the contracts in the names of Whairhouse LLC and From Start 2 Flipping LLC.

171.   Defendant Casey's apparent partnership with Pina and representations of his $100M property portfolio with Pina was instrumental to Plaintiff's decision to invest with the Defendants.

172.   To date, the Defendants have not repaid a single dollar to Chamblin.

173.   Plaintiff has recently discovered that one of the subject properties, 147

Manchester Avenue, has been pledged by Defendants to a multitude of other individual investors in unrelated joint venture contracts.

174.     Plaintiff has recently discovered that another one of the subject properties, 149 Franklin Avenue, was pledged under an incorrect address and that the actual property is currently subject to a large private mortgage which is under an active foreclosure proceeding.

175.     Plaintiff has recently discovered that the third subject property, 27 Boyden Parkway, is subject to a large third party mortgage-loan.

176.      The prior encumbrances and commitments regarding the subject properties were not disclosed to Plaintiff prior to making his investment.

## FACTS SPECIFIC TO PLAINTIFF REISPEC DEVELOPMENTS LLC

177.     Plaintiff's principal, James Cook ("Cook"), first heard of the Defendants through their radio appearances on DJ Envy's radio show, the Breakfast Club.

178.     In or around August 2022, Cook then began to pay follow the Defendants' on social media, particularly on Instagram.

179.      Cook was impressed as he listened to Defendants' promotional videos featuring Pina and DJ Envy touting their extensive property holdings and flashing large amounts of cash which they represented to be the proceeds of their rental properties.

180.      Cook was also impressed by the Defendants promotional posts and videos which frequently pictured themselves with celebrities, athletes, and political figures.

181.     In or around February 2023, Cook reached out to Defendant Pina in response to one of the promotional Instagram videos and asked him some questions about investing in real estate.

182.      The two began to exchange regular messages and within a few weeks Pina

invited Cook to New Jersey to spend a day with him looking at properties.

183.     At or around this time, Pina began to aggressively solicit Plaintiff's principal to invest with him in one or more real property ventures.

184.     To captivate Plaintiff's interest, Pina shared pictures of himself with various celebrities and professional athletes as well as promotional videos of himself with his "partners" and property managers, including Defendant Casey.

185.     Plaintiff's principal arrived in New Jersey in late February 2023 and spent the better part of a full day with Pina touring properties.

186.     Plaintiff's principal was driven around by Pina in Pina's Bentley wagon and was afterwards taken to a high-end steakhouse for dinner.

187.     Plaintiff's principal was then asked to invest and ultimately did agree to invest in three separate properties owned and managed by Pina and his network.

188.     Cook signed three separate joint venture agreements reflecting these agreements, the first was dated February 27, 2023, for real property located at 147 Manchester Avenue, Paterson, New Jersey, the second was also dated February 27, 2023, for real property located at 149 Franklin Avenue, Hawthorne, New Jersey 07506, and the third was dated March 23, 2023, for real property located at 523 Park Avenue, Paterson, New Jersey.

189.     All joint venture agreements were entered into between Plaintiff and Defendant Whairhouse LLC.

190.     The total amount invested by Cook across all three joint venture agreements was $750,000.00.

191.     Plaintiff was promised a return on investment of $460,000.00, and expected to receive a total return of $1,210,000.00 when the three properties sold.

192.     Plaintiff was also promised monthly rental income from one of the three

properties in the amount of $2,000.00 per month, which was to commence in April 2023.

193.     Plaintiff was told that he could expect, without question, to receive his promised

returns upon the sale of the subject properties, which would occur within 5-6 months at the latest.

194.     Plaintiff was led to believe that Defendants had already procured interested

buyers for each property.

195.     Plaintiff was told that the Defendants owned each property outright.

196.     Plaintiff was advised that his investment funds would be used to renovate each

subject property with a view towards substantially enhancing resale value.

197.      Plaintiff was not advised that any of the subject properties had other sources of

financing, including from retail individual investors or from banks or financial institutions.

198.      Plaintiff was not advised that any of the subject properties were subject to prior

encumbrances such as mortgages or liens.

199.     Plaintiff was not advised that any interests in the subject properties had been

pledged to other third party investors in similar "joint venture" contracts.

200.     All contracts were signed by Cesar Pina individually on the Defendants' behalf.

201.     On March 8, 2023 and March 22, 2023, Plaintiff sent two wire transfers to the

Defendants totaling $750,000.00.

202.     Wire instructions were provided by Cesar Pina.

203.     In or around April 2023, Plaintiff reached out to Pina to ask about the status of his

rent check.

204.     Pina did not respond.

205.     Plaintiff continued to reach out to Pina over the next few weeks to ask about the

status of the renovation work going on at other properties.

206.     Pina did not respond.

207.     After receiving upwards of 10 text messages from Plaintiff, Pina finally responded with a belated apology suggesting that he had been preoccupied in filming his TV show.

208.     Pina advised that work at the properties was ongoing and all was well.

209.     Pina advised that he would be sending Plaintiff a wire for his rent check.

210.     However, the rent payment for April did not arrive until June 2023.

211.     Plaintiff's principal became concerned about the status of his investments given Pina's lack of communication and failure to provide previously promised updates on the renovations and status of sale of the properties.

212.      At or around this time, Plaintiff became aware of videos circulating on social media from other victims of the scam, alleging that they had been defrauded of their funds.

213.     Plaintiff confronted Pina about these allegations but Pina failed to respond.

214.     In or around July 2023, Pina blocked Plaintiff on his cell phone and Plaintiff has not heard from him since that time.

215.     Plaintiff has received no return of his investment funds to date.

216.     Plaintiff has received no updates on the sale status of any of the properties.

217.     Plaintiff has received no updates on the renovation status of any of the properties.

218.     To the best of Plaintiff's knowledge, his funds were not used to perform any renovations at the subject properties but were in fact personally converted by the Defendants and used for other purposes.

219.     Plaintiff has recently discovered that one of the subject properties, 147

Manchester Avenue, has been pledged by Defendants to a multitude of other investors.

## FACTS SPECIFIC TO PLAINTIFF HERNANDEZ

220.     Plaintiff Hernandez is a long-time listener of the "Breakfast Club," DJ Envy's radio show.

221.     In or around the spring of 2020, Plaintiff Hernandez first saw Cesar Pina make a guest appearance on the "Breakfast Club," during which he spoke at length about his purported success in real estate investments and property management.

222.     After listening to Cesar's radio appearance, Hernandez began to follow Cesar and DJ Envy on social media, on the Instagram platform.

223.     Hernandez viewed hundreds of posts and videos shared by Cesar and DJ Envy on social media, during which they touted their successful real estate partnership, bragging about the extent of their property holdings and vast rental income, occasionally flashing stacks of cash and wads of "rent checks" which they claimed to be the proceeds of their property holdings.

224.     Hernandez also viewed social media posts by Cesar and DJ Envy through which they advertised upcoming in-person seminars and suggested that attendees would be provided with opportunities to invest in deals with the duo.

225.     Hoping to learn from Cesar and DJ Envy's expertise, and even to partner in a deal, Hernandez began to attend "Flipping NJ" seminars in New Jersey.

226.     Hernandez attended three full-day seminars hosted by DJ Envy and Cesar.

227.     Two seminars were held in New Jersey in 2021, and the final seminar Hernandez attended was hosted at the Javits Center in New York City in the summer of 2022.

228.     Following his attendance at the third seminar, Hernandez purchased a $4,000.00

ticket for a "VIP Dinner," which was supposed to include all of the feature speakers at the seminar, including DJ Envy, Cesar, and their entourage.

229.    Hernandez attended the VIP dinner, which was attended by Cesar, DJ Envy, and their close friends and family.

230.    Hernandez attended another "VIP event," a softball game organized by members of the Pina entourage which was also attended by Cesar Pina, DJ Envy's wife, and other members of the entourage.

231.    At the VIP Dinner event, Hernandez entered a conversation with Cesar Pina during which Cesar suggested that he invest in an upcoming real estate deal.

232.    Hernandez was enticed by the opportunity to enter into a partnership with Cesar and DJ Envy which he hoped would help him build wealth through his own holdings.

233.    Hernandez subsequently agreed to invest $250,000.00 into a real estate "joint venture agreement."

234.    The counter-party to the joint venture agreement was, on paper, Defendant From Start 2 Flipping LLC.

235.    However, in fact, Hernandez was led to believe and did believe in fact that he was investing into Cesar and DJ Envy's well-oiled real estate business.

236.    The joint venture agreement was specific to real property located at 145-147 Manchester Avenue, Paterson, New Jersey.

237.    Hernandez was promised, pursuant to the contract, that his $250,000.00 "capital contribution" would be repaid with a 30% premium, totaling $325,000.00 when the property sold.

238.    Hernandez was promised, pursuant to the contract, that the property would be sold

within five (5) months.

239.     Hernandez signed his first contract on August 4, 2022.

240.     The following day, Hernandez sent a wire transfer in the amount of $250,000.00 to secure his "capital contribution" requirement.

241.     In January 2023, as the deadline for performance neared, Cesar Pina reached out to Hernandez to advise him that he would need to "roll over" his contract into a second property.

242.     Still incredulous to any foul play, Hernandez agreed to "roll over" his funds into a second contract.

243.     In January 2023, Hernandez signed a second contract specific to property located at 523 Park Avenue, Paterson, New Jersey.

244.     The counter-party to this contract on paper was Defendant From Start 2 Flipping Chicago LLC.

245.      Hernandez was credited with a "roll over" capital contribution of $325,000.00 under the second contract, and was promised total repayment in the amount of $422,500.00 when the property sold.

246.      When the deadline for performance under the second contract came due, Defendants cut off contact with the Plaintiff gradually, then suddenly.

247.     Hernandez has recently learned that the properties which were the subject of his contracts were pledged to tens if not hundreds of other investors.

248.     Hernandez was never told that there was a single other third-party investor in either property.

### FIRST COUNT AGAINST ALL DEFENDANTS WITH THE EXCEPTION OF TAYLOR PINA, PAULA LLANOS, AND THE OHIO LLCs
**(Violation of New Jersey Consumer Fraud Act)**

249.     The allegations set forth above are repeated and incorporated by reference as if set forth fully herein.

250.     Defendants and their controlled business entities made deliberate affirmative misrepresentations to induce the Plaintiffs in this action to invest over $1.5 Million in funds (collectively) into short term joint venture contracts.

251.     Defendants and their controlled business entities also engaged in generally deceptive business practices including operation of what was in effect a "Ponzi scheme" and investment scam which was heavily promoted and targeted towards members of the public on social media through various accounts and on the radio and through in-person seminars.

252.     Defendants represented to Plaintiffs that they were in fact engaged in renovations and remodeling of the properties which were the subject of the joint venture, which was not in fact true.

253.     Defendants represented to Plaintiffs that they owned the properties which were the subject of the joint venture free and clear of any liens and encumbrances, which was in fact not true.

254.     Defendants represented to Plaintiffs that they had no other investors who had pledged capital secured by the subject properties, which was not in fact true.

255.     Defendants intentionally failed to disclose that various properties had other liens, encumbrances, and clouds on title which diminished their value or which would have impacted Plaintiffs' decision to enter into the contract.

256.     Defendants also have, upon information and belief, failed to disclose the existence of other investors in the same properties which were offered to Plaintiff via joint venture.

257.      At all times herein, Defendant Pina was the primary party responsible for taking in funds from the Plaintiffs.

258.      At all times herein, Defendant Casey is and was Defendant Pina's business partner in fact and Defendant Casey made a litany of public statements attesting to the existence of the partnership.

259.      Defendant Casey's apparent role in the partnership was to serve as a general promoter and booster and to use his celebrity and media assets to expand the investment base of the partnership, and to otherwise lend credibility to Pina.

260.      Defendant Casey did share in the income and profits of the partnership by way of receiving a share of proceeds from investment funds received by Defendant Pina and further by way of sharing in the proceeds of rents and sales proceeds from partnership properties and from sale of partnership merchandise and apparel under the "Trap Land Lord" brand.

261.      As set forth above, Defendants were operating a "Ponzi scheme" or investment scam wherein they persuaded a multitude of investors to pledge capital with a promise of paying outsized returns upon the sale of various properties, when in fact they had no realistic ability to repay most of his investors through the proceeds generated from their real estate assets, but merely attempted to pay back certain investors through funds received from later investors.

262.      Defendants used a variety of shell companies and LLCs to perpetrate their investment scam including the Whairhouse entities and the Flip2Dao entities.

263.      Defendant Casey knew or should have known of the extent of the scam and fraud

perpetrated by Pina, and was an active accomplice in the fraudulent scheme, as he continued to promote Pina as an expert to members of the general public on social media, on the radio, and during in-person seminars, with full knowledge of the fact that "investors" were being ripped off.

264.    The above false statements, misrepresentations, and deceptive business practices constitute "unlawful acts" under the Consumer Fraud Act.

265.    As a result of the Defendants' unlawful acts, Plaintiffs were caused and induced to invest with Defendants in joint venture agreements.

266.    As a result of the Defendants' unlawful acts as set forth above, Plaintiffs have sustained ascertainable monetary losses in the amount of approximately $2,000,000.00, which includes costs and promised profit return on investment as well as interest and penalties.

267.    Pursuant to the New Jersey Consumer Fraud Act, Plaintiffs seek mandatory treble damages and reimbursement of their counsel fees in addition to his economic damages.

**WHEREFORE**, Plaintiffs demand judgment against the named Defendants on the 1st Count of the Complaint, for:

A.  Compensatory, economic, consequential and punitive damages.

B.  Costs of suit.

C.  Attorney's fees as provided for by the CFA.

D.  Treble Damages as provided for by the CFA in the amount of not less than $6,000,000.00.

E.  Any other relief which the Court may deem proper.

**SECOND COUNT AGAINST ALL DEFENDANTS WITH THE EXCEPTION OF TAYLOR PINA, PAULA LLANOS, AND THE OHIO LLCs**
**(Fraud)**

268.    The allegations set forth above are repeated and incorporated by reference as if

set forth fully herein.

269.    Defendants made knowing, factually false representations to Plaintiff to induce them to invest in real estate "joint ventures," while having no intention to actually repay Plaintiffs or to beneficially develop the subject properties.

270.    The Defendants false statements included but were not limited to the following:

(a)  They stated that they owned property which they did not in fact own:

(b)  They stated that the subject property was not subject to any other liens or mortgages, which was not true:

(c)  They stated falsely that Plaintiff was the only investor in the property and that there were no other claims or investors with priority rights to repayment, which was not true;

(d)  They stated that the subject property was listed for sale which was not true;

(e)  They stated that Plaintiff's investment funds would be used to finance renovations at the property which was not true;

(f)  They stated that the property subject to the joint venture agreement was under contract, at or near closing, or that they were likely to be sold within a short period of time which was not true;

(g)  They vastly overstated their property holdings, wealth, and income to give the impression that they were far more successful than they were in fact.

271.    These false statements were made for the purpose of deceiving Plaintiffs regarding the likelihood of receiving a return on their capital investments, and for the purpose of keeping Plaintiffs from discovering the true nature of the ownership, encumbrances, and investment agreements with third parties which Defendants had previously entered into with respect to the property.

272.     Defendants made these false representations intentionally in order to persuade Plaintiffs to enter into the joint venture agreement, while having no intention to actually honor the terms of the joint venture agreements or to repay Plaintiffs' capital investments or promised returns.

273.     As a result of Defendants' willfully false representations, Plaintiffs relied to their detriment and agreed to give funds to the Defendants.

274.     Upon information and belief, all money that Plaintiffs invested pursuant to the joint venture agreements was withdrawn by the individual Defendants and used by them personally in connection with the continued operation of the fraudulent real estate scam, to pay for personal expenses, and/or to pay off claims from other investors who were demanding returns of capital.

275.     As a result of the Defendants' frauds, Plaintiffs have been damaged monetarily and deprived of funds in the amount of approximately $2,000,000.00.

**WHEREFORE**, Plaintiffs demand judgment against the named Defendants on the 2nd Count of the Complaint, for:

A.  Compensatory, economic, consequential and punitive damages.

B.  Costs of suit.

C.  Attorneys' fees.

D.  Any other relief which the court deems proper.

## THIRD COUNT AGAINST ALL DEFENDANTS WITH THE EXCEPTION OF TAYLOR PINA, PAULA LLANOS, AND THE OHIO LLCs
### (Breach of Contract)

276.     The allegations set forth above are repeated and incorporated by reference as if set forth fully herein.

277.     As set forth above, Defendants entered into multiple joint venture agreement with each of the Plaintiffs named in this Complaint.

278.     Plaintiffs performed their obligations under each agreeing by providing the full amount of their required capital contributions.

279.     Defendants have breached the agreements and have failed to honor any portion of the joint venture contracts.

280.     Defendants have failed to return any of the Plaintiffs' initial capital contributions or to pay promised profit premiums to any of the Plaintiffs.

281.     As a result of Defendants' breach of the relevant contracts, Plaintiffs have sustained monetary damages and losses in the area of $2,000,000.00.

282.     All Defendants are jointly and severally liable for the contract obligations of their Partnership and joint enterprise.

   **WHEREFORE**, Plaintiffs demand judgment against the named Defendants on the 3rd Count of the Complaint, for:

   A. Compensatory, economic, consequential and punitive damages.

   B. Costs of suit.

   C. Prejudgment and Post judgment interest.

   D. Any other relief which the court deems proper.

## FOURTH COUNT AGAINST ALL DEFENDANTS WITH THE EXCEPTION OF WITH THE EXCEPTION OF TAYLOR PINA, PAULA LLANOS, AND THE OHIO LLCs
### (Negligent Misrepresentation)

283.     The allegations set forth above are repeated and incorporated by reference as if set forth fully herein.

284.     As set forth above, Defendants entered into various joint venture agreement with

Plaintiffs.

285.     At various times, Defendants informed Plaintiffs that the properties subject to the joint venture were in the process of being renovated or were under contract for sale.

286.     At various times, Defendants informed Plaintiffs that their funds were being used to finance renovations of the properties.

287.     At various times, Defendants informed Plaintiffs that the subject properties were free and clear of encumbrances and were not subject to other claims from separate investors.

288.     These false representations were made by Defendants with a culpability amounting to at least negligence.

289.     Plaintiffs relied upon the truthfulness of these representations and as a result they agreed to invest funds with Defendants.

290.     Plaintiffs have been caused to sustain monetary losses of approximately $2,000,000.00 as of this date as a result of the false representations made by Defendants.

**WHEREFORE**, Plaintiffs demand judgment against the named Defendants on the 4th Count of the Complaint, for:

A.  Compensatory, economic, consequential and punitive damages.

B.  Costs of suit.

C.  Prejudgment and Post judgment interest.

D.  Any other relief which the court deems proper.

### FIFTH COUNT AGAINST ALL DEFENDANTS WITH THE EXCEPTION OF WITH THE EXCEPTION OF TAYLOR PINA, PAULA LLANOS, AND THE OHIO LLCs
**(Securities Fraud)**

291.     The allegations set forth above are repeated and incorporated by reference as if set forth fully herein.

292.     As set forth above, Defendants offered the Plaintiffs interests in "joint ventures" in specific real properties, which were in effect passive investment vehicles through which Plaintiffs expected to earn a profit through the efforts of the Defendants.

293.     Therefore, in reality the Defendants solicited the Plaintiffs to invest in a "security" as the term is defined by New Jersey Law and Federal Law.

294.     Defendants engaged in the offer and sale of securities without registering the securities and without a license in violation of New Jersey Law and Federal Law.

295.     Defendants committed outright fraud, as set forth above, in connection with their offer and sale of securities, in violation of New Jersey Law and Federal Law.

296.      Defendants operated a Ponzi scheme and a number of fraudulent enterprises in connection with their offer and sale of securities in violation of New Jersey Law and Federal Law.

297.     Defendant Casey at all times herein actively promoted, marketed, endorsed, and induced members of the public including the Plaintiff to invest in the Defendants securities.

298.     Upon information and belief, Defendant Casey received compensation or an interest in the Defendants' fraudulent securities' scheme in exchange for his efforts as a promoter and the publicity he engaged in on the Defendants behalf.

299.     Plaintiffs have been caused to sustain monetary loss of approximately $2,000,000.00 as of this date, which were caused by the Defendants' fraudulent securities scheme.

**WHEREFORE**, Plaintiffs demands judgment against the named Defendants on the 5th Count of the Complaint, for:

A.  Compensatory, economic, consequential and punitive damages.

B.  Costs of suit.

C.  Prejudgment and Post judgment interest.

D.  Any other relief which the court deems proper.

**SIXTH COUNT AGAINST DEFENDANT CASEY AND DEFENDANT LLANOS ONLY**
**(Conspiracy to Commit Fraud, Securities Fraud, Negligent Misrepresentation and to Violate the New Jersey Consumer Fraud Act)**

300.      The allegations set forth above are repeated and incorporated by reference as if set forth fully herein.

301.      This count is pled and proffered in the alternative as a separate count for conspiracy against Defendant Casey and Defendant Llanos only.

302.      As set forth above, Defendant Casey was Defendant Pina's partner in fact in the parties' real estate business.

303.      As set forth above, Defendant Casey frequently promoted Defendant Pina on various social media pages including the "Flipping NJ" social media accounts which the two operated together.

304.      As set forth above, Defendant Casey at all times appeared at in person "Flipping NJ" seminars with Defendant Pina to further boost Pina's credibility and appeal by lending his "celebrity" endorsement and by promoting Pina's real estate investments and credentials.

305.      As set forth above, Defendant Casey published videos on social media alongside Pina where the two solicited partnerships and investments from members of the public.

306.      Defendant Casey's frequent appearances alongside Pina at seminars and on the radio and on social media induced Plaintiff to invest with Pina.

307.      As set forth above, Defendant Casey received a direct financial benefit from

Pina's real estate investment scams, receiving a share of ticket sales from seminars, a share of investment funds raised, a share of rents collected through jointly owned properties, and/or an equity interest in many of Defendant Pina's enterprises or properties.

308.     At all times herein, Defendant Casey knowingly and willfully assisted Defendant Pina in his enterprise and particularly in the marketing and promotion of his real estate scams.

309.     Defendant Casey knew that Defendant Pina was defrauding members of the public.

310.     Defendant Casey nonetheless continued to aid and abet Pina and his businesses in their fraudulent activities.

311.     Defendant Casey also received funds from Pina which were the proceeds of the fraudulent activities described above, and otherwise shared in the profits of the investment scam and shared in the income/ proceeds of real properties which were jointly owned by Casey and Pina which were marketed to investors in the scam.

312.     Even after Pina's frauds had been made public, Casey continued to knowingly cover up for Pina and conceal the extent of Pina's fraudulent behavior.

313.     Accordingly, it is apparent that Casey and Pina entered into an explicit or implied agreement to carry on a conspiracy to profit for themselves at the expense of victims of their fraudulent real estate Ponzi scheme.

314.     Defendant Llanos was enlisted by Jennifer Pina and Cesar Pina in August 2023 to help the Pinas and their confederates conceal their assets from these Plaintiffs and other scam victims and prospective creditors.

315.     Defendant Llanos entered into an explicit arrangement with Defendants Cesar and

Jennifer Pina (who had at the time filed a personal bankruptcy petition, since dismissed), to use their assets to form thirteen separate LLCs in the State of Ohio, and then to acquire thirteen separate real properties.

316.     Llanos formed each LLC personally and named herself and Taylor Pina as the managers and agents of each LLC.

317.     Llanos subsequently assisted the Pinas in accomplishing the property acquisitions under each foreign LLC.

318.     Llanos actions directly aided, abetted, and supported the Pinas and their confederates in concealing assets which were defrauded from these Plaintiffs and other victims.

**WHEREFORE**, Plaintiffs demand judgment against the named Defendant on the 6th Count of the Complaint, for:

A.  Compensatory, economic, consequential and punitive damages.

B.  Costs of suit.

C.  Prejudgment and Post judgment interest.

D.  Any other relief which the court deems proper.

<u>**SEVENTH COUNT AGAINST ALL DEFENDANTS**</u>
**(Civil RICO Violation)**

319.     The allegations set forth above are repeated and incorporated by reference as if set forth fully herein.

320.     As set forth above, all Defendants were members of a common scheme and enterprise the purpose of which was allegedly to operate a real estate investment enterprise and public education program to encourage individuals to build wealth through real estate investments.

321.     In reality, the Defendants were operating a "racket" and making wild and

outright fraudulent representations to induce victims to part with large sums of cash in the hopes of making quick returns on real estate "flips," as they dealt in unregistered and unlicensed securities.

322.      The Defendants' racket included a client funnel and marketing program that involved the in-person Flipping NJ Seminars and the social media marketing machine described in this Complaint.

323.      All Defendants were members of the racket who agreed, explicitly or implicitly, to work together to further their joint interests and were or should have been aware of the fraudulent nature of the enterprise.

324.      All Defendants knew that few, if any "investors" were being paid returns on their "joint venture" flips deals because no properties were being renovated with funds that Defendants collected, no properties were being sold, and because the Defendants continually promised interests in the same properties to many different persons, while knowing that the properties did not have sufficient value to payout the promised returns.

325.      All Defendants know or should have known that they were lying to members of the public about their likelihood of receiving returns on their "investments."

326.      The Defendants promoted their racket aggressively through Defendant Casey's radio access and celebrity and through the promotions of other celebrities and through prominent figures on social media networks.

327.      As set forth above, Casey's interest in the racket was not limited to his activities as a promoter, he was deeply and intimately intertwined with the Pina network and repeatedly solicited members of the public to invest in the enterprise.

328.      The Defendants were all members of this fraudulent and likely criminal

enterprise who profited personally from outright frauds, wire fraud, securities fraud, and other predicate wrongful and likely criminal acts.

329.     The Plaintiffs in this action are among the victims of the racket and have sustained large financial losses in the principal amount of at least $2,000,000.00.

**WHEREFORE**, Plaintiffs demand judgment against the named Defendants on the 7th Count of the Complaint, for:

A.  Compensatory, economic, consequential and punitive damages.

B.  Costs of suit.

C.  Prejudgment and Post judgment interest.

D.  Any other relief which the court deems proper.

## EIGHTH COUNT AGAINST DEFENDANTS CASEY, LUIS PINA, JENNIFER PINA AND PAULA LLANOS ONLY
### (Joint and Several Liability)

330.     The allegations set forth above are repeated and incorporated by reference as if set forth fully herein.

331.     As set forth above, Defendant Casey repeatedly held himself out to members of the public as Defendant Pina's business partner, through statements at in-person seminars, through a multitude of recorded videos and posts disseminated on social media, and through a pilot reel for a television show on HGTV, among other means.

332.     Defendants Luis Pina and Jennifer Pina also held themselves out at various times and in a multitude of recorded statements and interviews to be business partners of Cesar Pina and DJ Envy.

333.     These statements and videos and posts were used to solicit investments and were material factors and influences in causing persons to invest in the Defendants' real estate scam.

334.     Defendant Casey was also a partner in fact of the Defendant Cesar Pina, as he shared in profits of the enterprise, shared in the proceeds of the sale of partnership investment properties, and shared in the income received in rents collected from partnership properties.

335.     Defendant Casey collected income from the same properties which were marketed to investors in the scam, including the property which was the subject of Plaintiff's joint venture agreement.

336.     Defendant Casey shared an office space with Defendant Pina in Totowa New Jersey, which was the primary location used to meet with investors and to collect funds, this location was described to investors as the business office of the partnership.

337.     Defendant Casey was also asked to share and join equally in losses borne by the partnership including deficits in returns on certain partnership properties.

338.     As set forth above, Plaintiff and other investors relied on Casey's involvement as a partner in the real estate business in making decisions to invest funds in joint venture agreements.

339.     Defendant Casey is jointly and severally liable for the debts, obligations and liabilities of the partnership and those incurred due to the actions of his partner Defendant Cesar Pina pursuant to the New Jersey Uniform Partnership Act.

340.     This includes joint and several liability to the Plaintiffs for the full amount of their economic losses which total approximately $2,000,000.00.

**WHEREFORE**, Plaintiffs demand judgment against the named Defendants on the 8th Count of the Complaint, for:

A.  Compensatory, economic, consequential and punitive damages.

B.  Costs of suit.

C.  Prejudgment and Post judgment interest.

D.  Any other relief which the court deems proper.

## NINTH COUNT AGAINST DEFENDANTS TAYLOR PINA, PAULA LLANOS, AND OHIO LLCs ONLY
### (Fraudulent Transfer)

341.      The allegations set forth above are repeated and incorporated by reference as if set forth fully herein.

342.      Defendant Taylor Pina has received outright fraudulent transfers of money and real property from her parents, Defendants Cesar Pina and Jennifer Pina, worth millions of dollars or more.

343.      These fraudulent transfers began in or around late 2022 and have continued through the date of the filing of this complaint.

344.      These fraudulent transfers have been made for the purpose of defrauding actual creditors of the Defendants Cesar and Jennifer Pina and the other Defendants named herein.

345.      These transfers have been made without receiving anything of reasonably equivalent value in exchange.

346.      These transfers have been made by Cesar and Jennifer Pina while they possessed knowledge and notice of actual legal claims from creditors.

347.      In addition to making outright transfers of money and property to Taylor Pina, Defendants Cesar and Jennifer Pina enlisted the aide of Paula Llanos in forming 13 separate Ohio LLCs to hold title to 13 properties in that State, in the City of Cleveland.

348.      Each Ohio LLC lists Llanos and Taylor Pina as managing members and agents.

349.      Each Ohio LLC holds a single property.

350.      Each Ohio LLC was formed in August 2023, after the co-Defendants had actual

knowledge of legal claims from these Plaintiffs and other victims.

351.        Each of the Ohio LLCs purchased property with funds supplied by the co-

Defendants, without receiving anything in exchange as reasonably equivalent value.

**WHEREFORE**, Plaintiffs demand judgment against the named Defendants on the 9th

Count of the Complaint, for:

A.  Compensatory, economic, consequential and punitive damages.

B.  Costs of suit.

C.  Prejudgment and Post judgment interest.

D.  Disgorgement and Reversal of All Fraudulent Transfers.

E.  Any other relief which the court deems proper.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, notice is hereby provided that Alexander Schachtel, Esq, is

designated as trial counsel in this matter.

**Alexander Schachtel, Esq.**
*Attorney for Plaintiffs*


By: */s/ Alexander Schachtel*
Alexander Schachtel, Esq.

DATED:  December 8, 2023

## JURY DEMAND

Plaintiffs hereby demand a jury trial as to all issues so triable.

**Alexander Schachtel, Esq.**
*Attorney for Plaintiffs*


By: */s/ Alexander Schachtel*
Alexander Schachtel, Esq.

DATED:  December 8, 2023                                    Law Office of Alexander Schachtel
101 Hudson Street, Ste. 2109

Jersey City, NJ 07302
(p) 201-925-0660
(e) info@schachtelaw.com